WEBSTER, Judge.
In this direct criminal appeal, appellant challenges his conviction, following a jury trial, for manslaughter. Although appellant raises a number of issues, we conclude that only one merits discussion. Because the trial *907 court denied appellant’s request that it include the definitions of justifiable and excusable homicide in a reinstruction on manslaughter requested by the jury, we reverse, and remand for a new trial.
Appellant was charged with second-degree murder. At trial, he admitted that he had shot the victim. However, he claimed that the shooting was justified because he had had a well-founded fear that the victim was armed, and posed an immediate threat of great bodily harm to him.
At the conclusion of the trial, the trial court instructed the jury. The charge included the definitions of second-degree murder and the lesser-included offenses of third-degree murder and manslaughter. It also included the definitions of justifiable and excusable homicide, and an instruction on self-defense.
Some thirty minutes after it had retired to deliberate, the jury requested that the trial court again read the instruction on self-defense. This was done, and the jury again retired to deliberate. Twenty-four minutes later, the juiy requested that the trial court again read the manslaughter instruction. The trial court again read the standard instruction for manslaughter, including the sentence which states that “the defendant cannot be guilty of manslaughter if the killing was either justifiable or excusable homicide as I have previously explained those terms.” However, it did not again read the definition for either justifiable or excusable homicide. Before the jury retired to resume deliberations, appellant’s counsel asked to approach the bench, and explained that he believed that it was necessary to read the definitions of justifiable and excusable homicide, as a part of the definition of manslaughter. The trial court initially responded that it did not “have any problem with giving it.” However, the prosecutor objected, saying that the jury “asked for the instruction on manslaughter and that is what the court addressed by that instruction, so I don’t think it is necessary.” The trial court then changed its ruling, declining to read again the definitions of justifiable and' excusable homicide. A short time later, the jury returned a verdict finding appellant guilty of the lesser-included offense of manslaughter. We conclude that the prosecutor led the trial court to commit error requiring reversal, and remand for a new trial.
This issue is controlled by the decision in Hedges v. State, 172 So.2d 824 (Fla.1965). In Hedges, the defendant was tried on the charge of first-degree murder, and convicted of manslaughter. At the conclusion of the trial, the trial court had “instructed the jury on all degrees of unlawful homicide ... [and] on justifiable and excusable homicide.” Id. at 825. After the jury had retired to deliberate, it requested that the trial court again instruct it regarding the definitions of the various degrees of unlawful homicide. The trial court responded by again reading the definitions of the various offenses. However, it denied the defendant’s request that it again read the definitions of justifiable and excusable homicide as well, as necessary to a complete definition of manslaughter. The supreme court reversed. Observing that the statutory definition of manslaughter expressly excludes killings that are either justified or excusable, the court said:
One notes immediately that [manslaughter] is in the nature of a residual offense. If a homicide is either justifiable or excusable it cannot be manslaughter. Consequently, in any given situation, if an act results in a homicide that is either justifiable or excusable as defined by statute, a not guilty verdict necessarily ensues. The result is that in order to supply a complete definition of manslaughter as a degree of unlawful homicide it is necessary to include also a definition of the exclusions....
[[Image here]]
In the instant case when the judge repeated his charges on degrees of homicide he should have included the requested definitions of justifiable and excusable homicide. Failure to do so erroneously left with the jury an incomplete, and, potentially misleading instruction.
Id. at 826. Accord Stockton v. State, 544 So.2d 1006, 1008 (Fla.1989) (“when a trial court reinstruets on manslaughter, it is then compelled to reinstruct on justifiable and ex *908 cusable homicide as a necessary concomitant of manslaughter”). In an attempt to ensure that this requirement is not inadvertently overlooked by trial judges, the following “Note to Judge” has been placed at the end of the standard instruction for manslaughter: “In the event of any reinstruetion on manslaughter, the instructions on justifiable and excusable homicide as previously given on page 61 should be given at the same time. Hedges v. State, 172 So.2d 824 (Fla.1965).” The Florida Bar, Standard Jury Instructions, Criminal Cases, 477 So.2d 985, 992 (Fla.1985); Standard Jury Instructions in Criminal Cases, 636 So.2d 502, 507 (Fla.1994) (adding the words “as previously given” before the words “on page 61”).
The state argues that the reinstruetion was not error because it included the language that “the defendant cannot be guilty of manslaughter if the killing was either justifiable or excusable homicide as I have previously explained those terms.” It should be apparent that such language, which is a part of the standard manslaughter instruction, does not comply with the “Note to Judge” appearing at the end of that instruction. Moreover, such an argument overlooks our decision in Brown v. State, 610 So.2d 579 (Fla. 1st DCA 1992). The relevant facts in Brown are indistinguishable from those of this case. There, the reinstruetion given was substantively identical to that given here. There, as here, the state argued that the reference to justifiable and excusable homicide was sufficient, notwithstanding the failure to read again the definitions of justifiable and excusable homicide. We rejected that argument then, and we again reject it. It is unimaginable to us that the jury would be sufficiently confused regarding the definitions of self-defense and manslaughter to request rein-struction, but that it could “clearly recall the definitions of justifiable and excusable homicide, and that the mere mention of these words must have served to trigger this memory with enough clarity in their collective minds to rectify any technical shortcoming in the instruction.” Id. at 581.
The state also argues that, if the failure to reinstruet on the. definitions of justifiable and excusable homicide as a part of the manslaughter reinstruetion was error, it was harmless, and does not warrant reversal. We lack the power to divine what was in the jurors’ minds when they rendered their verdict. However, considering that appellant’s principal defense was that he acted in self-defense and that, therefore, the shooting was justified; that the jury requested to be rein-structed on the definitions of self-defense and manslaughter; and that, although charged with second-degree murder, appellant was convicted of manslaughter; we are unable to conclude that the state has met its burden to establish “beyond a reasonable doubt that the error did not affect the verdict.” State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986). Appellant’s conviction is reversed, and the case is remanded for a new trial.
REVERSED and REMANDED, with directions.
MINER and MICKLE, JJ., concur.